IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

CONNIE R. ADAMS,                         )
                                         )
                    Plaintiff,           )
                                         )
        v.                               )        1:15CV733
                                         )
CAROLYN W. COLVIN,                       )
Acting Commissioner of Social Security,  )
                                         )
                    Defendant.           )


MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Connie R. Adams, brought this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act (the "Act"), as amended (42 U.S.C. §§ 405(g) and 1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security denying her claims for Disability Insurance Benefits and Supplemental Security Income under, respectively, Titles II and XVI of the Act. The parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

I.    PROCEDURAL HISTORY

Plaintiff protectively filed her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income Benefits ("SSI") on February 13, 2012, alleging a disability onset date of July 10, 2009. (Tr. at 11, 191-201.)[1] Her applications were denied initially (Tr. at 43-70, 99-107) and upon reconsideration (Tr. at 71-98, 111-19). Thereafter, Plaintiff

_____

[1] Transcript citations refer to the Sealed Administrative Transcript of Record [Doc. #6].

requested a hearing before an Administrative Law Judge ("ALJ") (Tr. at 120-21), which she attended on March 10, 2014, along with her attorney (Tr. at 11). She amended the date of her alleged onset of disability to February 13, 2012. The ALJ ultimately issued a decision finding that Plaintiff was not disabled under the meaning of the Act (Tr. at 20), and on July 9, 2015, the Appeals Council denied Plaintiff's request for review, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review (Tr. at 1-5).

## II.   LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of [the] review of [such an administrative] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal brackets omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472. "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that in administrative proceedings, "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[2]

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the

---

[2] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program . . . provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first two steps, and establishes at step three that the impairment "equals or exceeds in severity one or more of the impairments listed in Appendix I of the regulations," then "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual function[al] capacity ('RFC')." Id. at 179.[3] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can

---

[3] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that pursuant to the administrative regulations, the "RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

4

"perform past relevant work"; if so, the claimant does not qualify as disabled.  Id. at 179-80.

However, if the claimant establishes an inability to return to prior work, the analysis proceeds

to the fifth step, which "requires the Commissioner to prove that a significant number of jobs

exist which the claimant could perform, despite [the claimant's] impairments."  Hines, 453

F.3d at 563.  In making this determination, the ALJ must decide "whether the claimant is able

to perform other work considering both [the claimant's RFC] and [the claimant's] vocational

capabilities (age, education, and past work experience) to adjust to a new job."  Hall, 658 F.2d

at 264-65.  If, at this step, the Government cannot carry its "evidentiary burden of proving

that [the claimant] remains able to work other jobs available in the community," the claimant

qualifies as disabled.  Hines, 453 F.3d at 567.

III.   DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in "substantial gainful

activity" since her alleged onset date.  Plaintiff therefore met her burden at step one of the

sequential analysis.  At step two, the ALJ further determined that Plaintiff had three severe

impairments:  generalized anxiety disorder with panic attacks, mild mental retardation, and

dysthymic disorder.[4]  (Tr. at 13.)  However, the ALJ found at step three that none of these

impairments met or equaled a disability listing. (Tr. at 13-15.)  Therefore, the ALJ assessed

Plaintiff's RFC and determined that she could perform a full range of work at all exertional

levels, but with the following nonexertional limitations:

---

[4] Effective September 3, 2013, the Social Security Administration replaced the term "mental retardation" with "intellectual disability" in the Listings. Change in Terminology: "Mental Retardation" to "Intellectual Disability", 78 Fed. Reg. 46499–01 (Aug. 1, 2013).  The Court uses "mental retardation" where the medical records or administrative determinations use that designation, but the Court will otherwise use the modified nomenclature.

The claimant is capable of performing simple routine repetitive tasks with simple short instructions in a low-stress job that has no production or pace requirements and only requires occasional contact with coworkers and supervisors and no contact with the general public to perform her job tasks.

(Tr. at 16.) At step four of the analysis, the ALJ found that the demands of Plaintiff's past relevant work exceeded her RFC. However, he further determined at step five that Plaintiff's limitations "have little or no effect on the occupational base of unskilled work at all exertional levels." (Tr. at 19.) The ALJ therefore applied the Medical-Vocational Guidelines ("the Grids") contained in 20 C.F.R. Chapter III, Part 404, Subpart P, Appendix 2, and concluded that "[a] finding of 'not disabled' [was] therefore appropriate under the framework of section 204.00." (Id.)

Plaintiff now argues that the ALJ erred in three respects. First, she contends that, although the ALJ found her moderately limited in activities of daily living, social functioning, and concentration, persistence, or pace, he failed to properly account for these limitations in her RFC assessment in accordance with Mascio v. Colvin, 780 F.3d 632 (4th Cir. 2015). (Pl.'s Br. [Doc. #9] at 8-15.) Second, Plaintiff challenges the ALJ's step three finding, asserting that the ALJ failed to adequately explain his reasoning in accordance with Radford v. Colvin, 734 F.3d 288 (4th Cir. 2013), in concluding that Plaintiff did not meet the requirements of 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.05C (hereinafter "Listing 12.05C"). (Pl.'s Br. at 3-8.) Third, Plaintiff challenges the ALJ's reliance on the Grids, rather than the testimony of a vocational expert, at step five. (Pl.'s Br. at 15-20.) After a thorough review of the record, the Court agrees that remand is required. The Court first considers the alleged error at step three of the sequential evaluation process with regard to Listing 12.05C, and then addresses

the alleged errors at steps four and five regarding the use of the Grids and the application of

Mascio.

A.      Listing 12.05C

At step two of the sequential analysis, the ALJ determined that Plaintiff's mental

retardation constituted a severe impairment. However, the ALJ concluded at step three of the

sequential analysis that Plaintiff's mental retardation failed to meet the requirements of the

Listings,[5] including Listing 12.05C. Listing 12.05C provides that:

> Intellectual disability refers to significantly subaverage general intellectual
> functioning with deficits in adaptive functioning initially manifested during the
> developmental period; i.e., the evidence demonstrates or supports onset of the
> impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in
> A, B, C, or D are satisfied.
> . . . .
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical
> or other mental impairment imposing an additional and significant work-related
> limitation of function[.]

20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.05. In other words, a claimant must

demonstrate three elements to meet Listing 12.05C: (1) deficits in adaptive functioning

manifested before age 22, (2) a valid IQ score between 60 and 70, and (3) another severe

---

[5] "Under Step 3, the regulation states that a claimant will be found disabled if he or she has an impairment that 'meets or equals one of [the] listings in appendix 1 of [20 C.F.R. Pt. 404, Subpt. P] and meets the duration requirement.'" Radford, 734 F.3d at 293 (quoting 20 C.F.R. § 404.1520(a)(4)(iii) (bracketed numerals omitted)). "The listings set out at 20 CFR pt. 404, subpt. P, App. 1, . . . are descriptions of various physical and mental illnesses and abnormalities, most of which are categorized by the body system they affect. Each impairment is defined in terms of several specific medical signs, symptoms, or laboratory test results." Sullivan v. Zebley, 493 U.S. 521, 529-30 (1990) (footnote omitted). "In order to satisfy a listing and qualify for benefits, a person must meet all of the medical criteria in a particular listing." Bennett, 917 F.2d at 160 (citing Zebley, 493 U.S. at 530, and 20 C.F.R. § 404.1526(a)).

impairment. In the present case, Plaintiff's IQ was measured at 65 and 67 (Tr. at 315, 366), she attended special education classes for all of her classes in high school (Tr. at 31, 377, 379, 380), and she reads at a 3rd grade level and does math at a Kindergarten or 1st grade level (Tr. at 319, 364). In addition, the ALJ found the additional severe impairments of generalized anxiety disorder with panic attacks and dysthymic disorder, resulting in hospitalization for suicidal ideations and auditory hallucinations on two occasions in 2013. (Tr. at 13, 17, 400-49.) These records reveal a recent diagnosis of bipolar disorder and treatment with antipsychotic medications. (Tr. at 400-24, 426-49.) However, the ALJ concluded that even if Plaintiff had the requisite IQ and additional mental impairment required to meet prongs two and three of Listing 12.05C, Plaintiff had failed to establish the first prong, "deficits in adaptive functioning," because the evidence "does not document concurrent deficits or impairments in present adaptive functioning as required to meet the listing." (Tr. at 15.) In making this finding, the ALJ specifically adopted the American Psychiatric Association's definition of "adaptive deficits," provided in the *Diagnostic and Statistical Manual of Mental Disorders* (DSM-IV-R) (4th Ed. Rev. 1994), defined as "significant limitations in adaptive functioning in at least two of the following skill areas: communication, self-care, home living, social/interpersonal skills, use of community resources, self-direction, functional academic skills, work, leisure, health, and safety." (See Tr. at 15 n.1.) The ALJ concluded that Plaintiff did not have "significant" deficits in the adaptive functioning areas of social skills, home living, and self-direction, and that the requirements of Listing 12.05C therefore were not met. However, this finding requires further analysis for two reasons: (1) it is internally inconsistent

with the ALJ's other findings, and (2) the bases relied upon by the ALJ to support this finding are not supported by the evidence of record.

First, the Listing 12.05C finding that Plaintiff did not have "significant" deficits in the adaptive functioning areas of social skills, home living, and self-direction, is not consistent with the ALJ's separate finding that Plaintiff was moderately limited in concentration, persistence, or pace, moderately limited in social functioning, and moderately limited in activities of daily living.[6] See Rothrock v. Colvin, No. 1:13CV497, 2016 WL 1175189, at *7 (M.D.N.C. Mar. 23, 2016). In Rothrock, another Court in this District concluded that remand was required in this situation, because, "'while finding [P]laintiff not to have 'significant' deficits in [the] adaptive functioning [areas of social skills and self-direction], the ALJ did find [P]laintiff to have moderate difficulties in social functioning and in concentration, persistence, or pace. These findings tend to contradict the ALJ's determination that [P]laintiff has no significant deficits in adaptive functioning.'" Id. (quoting Mebane v. Colvin, No. 2:13CV43FL, 2014 WL 3510208, at *6 (E.D.N.C. July 15, 2014)). Because "[t]he ALJ d[id] not squarely resolve the apparent conflict between these rulings," the Court in Rothrock recommended remand for further administrative findings. Id. ("The Court should vacate the ALJ's step three determination and remand for further administrative proceedings" because "the ALJ did not squarely resolve the apparent conflict between these rulings regarding Plaintiff's social skills

_____

[6] Adjudicators utilize the four "paragraph B" criteria, i.e., the degree to which a claimant is limited in terms of daily living, social functioning, and concentration, persistence or pace, along with any episodes of decompensation, to "rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process." SSR 96-8p. In the present case, at the third step, the ALJ found that "[w]ith regard to concentration, persistence or pace, the claimant has moderate difficulties." (Tr. at 14.) The ALJ also found that Plaintiff "is moderately restricted in her activities of daily living" and that "[i]n social functioning, [Plaintiff] has moderate difficulties." (Tr. at 14.)

9

and self-direction" (internal quotation omitted); accord Harris v. Colvin, No. 2:13CV28109, 2015 WL 268246, at *16 (S.D.W. Va. Jan. 20, 2015) (unpublished) ("[T]he ALJ's written decision cannot withstand scrutiny. Her findings of moderate limitations in two categories of adaptive functioning [i.e., social functioning and concentration, persistence, or pace], by themselves, tend to negate her unsupported statement that 'the deficits in adaptive functioning needed to establish mental retardation are simply not present.' "); see also Blancas v. Astrue, 690 F. Supp. 2d 464, 477 (W.D. Tex. 2010) (observing that, although Listing 12.05C "does not specify what degree of deficit is required (mild versus [moderate], for example)," because Prong 1 of Listing 12.05C also applies to Listing 12.05D, the degree of "deficits necessary to satisfy [Prong 1] would appear to be less than the [Prong 3] criteria of Listing 12.05D, which requires 'marked' restriction of activities of daily living and social functioning"). Likewise, in the present case, the ALJ's inconsistent findings – finding moderate limitations in social functioning, moderate limitations in concentration, persistence, and pace, and moderate limitations in activities of daily living but no deficits in adaptive functioning under Listing 12.05C – require remand so that the ALJ can further analyze and reconcile these findings in the first instance.

Second, the Court also notes that the bases cited by the ALJ in support of the Listing 12.05C finding do not appear to be supported by the evidence of record. Specifically, the ALJ cited two bases for concluding that Plaintiff did not have the adaptive deficits required to satisfy Listing 12.05C, specifically noting that: (1) her "work history as a teacher assistant,[7] cashier, and splicer demonstrates her ability to perform successfully in the workplace even

---

[7] Plaintiff was an assistant at a daycare.  (Tr. at 251.)

after the onset of several of her current impairments"; and (2) "in pursuing her claim for benefits, [Plaintiff] has completed multiple forms and has demonstrated a good ability to read and write." (Tr. at 15.) However, as to the latter rationale, the record includes contrary observations from SSA representatives assisting Plaintiff in the application process. For example, SSA representatives specifically noted in "Worker's Observation of Difficulties" that "[p]aperwork overwhelmed client, had caseworker read and explain documents." (Tr. at 216.) One of those documents was a Function Report that Plaintiff attempted to complete, but her answers reflect limitations in her ability to communicate in writing.[8] In answer to the question whether Plaintiff could read and write, an SSA representative assisting Plaintiff noted "yes very limited." In describing Plaintiff's behavior, appearance, and limitations, a representative noted that she "appeared to have a problem reading information to me." (Tr. at 219.) Notes in the record by SSA representatives also reflect that Plaintiff had to call in to complete her work history by telephone. (Tr. at 251, 189.) Plaintiff was thereafter represented by an attorney representative who submitted forms for her. Thus, it is not clear that the record would support the conclusion that "in pursuing her claim for benefits, [Plaintiff] has completed multiple forms and has demonstrated a good ability to read and write."[9]

---

[8] For example, in response to the first question: "Describe what you do from the time you wake up until going to bed," Plaintiff wrote: "I get up do light house work Take walks go to Church my food prepare fore me Take Showers." (Tr. at 238.)

[9] The Court notes other inconsistencies between the ALJ's findings and the record. For example, in describing Plaintiff's activities of daily living, the ALJ stated that "[t]he claimant's mother, Nancy Smith, indicated in a third-party function of March 2012 that the claimant has no problem handling her own personal care needs and that she is very neat. She further reported that the claimant helps her with household chores such as cleaning the house and doing laundry and that the claimant cooks once a week and shops for groceries twice a month." (Tr. at 14, 18.) However, Nancy Smith is not Plaintiff's mother and is instead the house manager at the homeless shelter/women's home where Plaintiff was living. (Tr. at 230.) In the function report, Ms. Smith noted that Plaintiff "cleans around her bed area" and "tries to help me clean around the house" but "she has trouble compre[he]nding some things," she "has trouble learning to cook on stove," she is a "very slow learner,"

With respect to her past work history, the ALJ relied on Plaintiff's prior work experience to conclude that Plaintiff had failed to establish adaptive deficits. However, Plaintiff reported her prior employment, but also indicated that she was fired from each position, including because she missed work too often when she was depressed and because she was "too slow." (Tr. at 33-35, 222.) Moreover, with respect to such reliance on past work history,

> that subject rightfully may bear upon the adaptive deficits inquiry, <u>see, e.g.</u>, <u>Cheatum v. Astrue</u>, 388 Fed. Appx. 574, 576 n.3 (8th Cir. 2010); <u>Caldwell v. Astrue</u>, No. 1:09CV233, 2011 WL 4945959, at *4 (W.D.N.C. Oct. 18, 2011) (unpublished); "[h]owever, the fact that a claimant has been able to work in the past does not necessarily suggest that the claimant does not satisfy the deficits in adaptive functioning requirement. . . . 'Listing 12.05(C) assume[s] many, if not most, mildly mentally retarded individuals will be able to work ... [but that they may] subsequently become disabled due to the development of additional severe impairments.' " <u>Shaw v. Astrue</u>, No. 4:08CV132-D(2), 2009 WL 2486932, at *6-7 (E.D.N.C. Aug. 13, 2009) (unpublished) (quoting <u>Muntzert v. Astrue</u>, 502 F. Supp. 2d 1148, 1158 (D. Kan. 2007)); <u>accord</u> <u>Davis v. Astrue</u>, C/A No. 2:07–1621–JFA–RSC, 2008 WL 1826493, at *4 (D.S.C. Apr. 23, 2008) (unpublished). In this instance, the Court should remand because "the ALJ appears to have placed improper weight on [prior employment] evidence and failed to consider the possibility that [Plaintiff] might have met [Prong 1 of Listing 12.05C] in spite of h[is] history of [work-related] functionality." <u>Brooks v. Astrue</u>, No. 2:10CV37D, 2011 WL 3882283, at *8 (E.D.N.C. Aug. 17, 2011) (unpublished), <u>recommendation adopted</u>, 2011 WL 3904104 (E.D.N.C. Sept. 2, 2011) (unpublished).

<u>Rothrock</u>, 2016 WL 1175189, at *9. In the present case, the record reflects an increase in Plaintiff's anxiety disorder with panic attacks around the time she was fired from her last job.

---

she "can't focus long at all," she needs help following instructions, and Ms. Smith has to repeat herself "3 or more times to get her to try to understand what I am telling her." (Tr. at 230-35.) With respect to Plaintiff's mother, Plaintiff reported that she does not have contact with her mother because her mother took legal custody of Plaintiff's 8-year-old son, against Plaintiff's wishes, based on contentions that Plaintiff was unable to care for him. (Tr. at 29, 40, 365, 409.)

(Tr. at 304, 305, 315-18, 358.) Her ability to work prior to that time is not necessarily reflective of a lack of adaptive deficits under the Listing 12.05C analysis.

Finally, the Court also notes that the ALJ did not address other evidence in the record, including evidence of Plaintiff's inability to cook for herself, inability to drive, inability to maintain a bank account, and apparent inability to live on her own or care for her child. The ALJ also failed to make any assignment of weight with respect to the decision of the Consultative Examiner, who opined that Plaintiff had "significant limitations in adaptive behavior and interpersonal relationship and making reasonable judgment and decisions" and "significant anxiety and depression," and who indicated that "[i]f awarded benefits, [Plaintiff] would need assistance in handling them in her best interest." (Tr. at 367.)

In these circumstances, and particularly in light of the ALJ's inconsistent findings, and the bases given by the ALJ to support the Listing 12.05C determination and the unresolved factual questions in the record, the case should be remanded for further consideration, explanation, and reconciliation of the analysis as to Listing 12.05C. Radford, 734 F.3d at 296 (instructing that where, as here, there is conflicting evidence in the record as to whether the claimant satisfies a Listing, but insufficient analysis or explanation of the issue by the ALJ, remand offers the best course of action).

B.     Step Four and Five and Reliance on the Grids

Plaintiff also challenges the ALJ's reliance on the Grids at step five of the sequential analysis. At step five,

> the regulations establish "grids" that take administrative notice of the availability of job types in the national economy for persons having certain characteristics, namely age, education, previous work experience, and residual functional capacity. Each grid table, however, only considers the strength or "exertional"

13

component of the claimant's disability in determining whether jobs exist that the claimant is able to perform in spite of his disability. For that reason, the regulations themselves specifically provide that where the claimant's impairment is nonexertional—not manifested by a loss of strength or other physical abilities—or is marked by a combination of exertional and nonexertional impairments, the grids' Rules are not conclusive, and full individualized consideration must be given to all relevant facts of the case. Id. Part 404, subpart P, Appendix 2, § 200.00(a), (d)–(e); 20 C.F.R. § 404.1569. In particular, the regulations note that individualized consideration must be given when nonexertional impairments further narrow the range of jobs available to the claimant, considering his exertional impairments. Id. Part 404, subpart P, Appendix 2, § 200.00(d)(2).

Grant v. Schweiker, 699 F.2d 189, 191-92 (4th Cir. 1983). The regulations themselves specifically provide that the Grids "do not direct factual conclusions of disabled or not disabled for individuals with solely nonexertional types of impairments." 20 C.F.R. § 404, Appendix 2 to Subpart P, section 200.00(e)(1). In Social Security Rule 85-15, the Social Security Administration offered further guidance on the use of the Grids in cases involving nonexertional limitations, noting again that "where a person has solely a nonexertional impairment(s), the table rules do not direct conclusions of disabled or not disabled." Instead, the relevant issue is "how much the person's occupational base – the entire exertional span from sedentary work through heavy (or very heavy) work – is reduced by the effects of the nonexertional impairment(s). This may range from very little to very much, depending on the nature and extent of the impairment(s). In many cases, a decisionmaker will need to consult a vocational resource." Titles II & XVI: Capability to Do Other Work – The Medical-Vocational Rules as a Framework for Evaluating Solely Nonexertional Impairments, SSR 85-15, 1985 WL 56857, at *1, *3 (S.S.A. 1985); see also Grant, 699 F.2d at 192 ("The grids may satisfy the Secretary's burden of coming forward with evidence as to the availability of jobs the claimant can perform only where the claimant suffers solely from exertional impairments.

14

To the extent that nonexertional impairments further limit the range of jobs available to the claimant, the grids may not be relied upon to demonstrate the availability of alternative work activities. Instead, in such cases the Secretary must produce a vocational expert to testify that the particular claimant retains the ability to perform specific jobs which exist in the national economy.").

With respect to stress and mental illness, Social Security Ruling 85-15 also notes that "[b]ecause response to the demands of work is highly individualized, the skill level of a position is not necessarily related to the difficulty an individual will have meeting the demands of the job." Social Security Ruling 85-15 goes on to note that

> [w]here a person's only impairment is mental, is not of listing severity, but does prevent the person from meeting the demands of past relevant work and prevents the transferability of acquired work skills, the final consideration is whether the person can be expected to perform unskilled work. The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting. A substantial loss of ability to meet any of these basic work-related activities would severely limit the potential occupational base.

SSR 85-15, 1985 WL 56857, at *4. A specific example is then provided:

> Example 1: A person whose vocational factors of age, education, and work experience would ordinarily be considered favorable (i.e., very young age, university education, and highly skilled work experience) would have a severely limited occupational basis if he or she has a mental impairment which causes a substantial loss of ability to respond appropriately to supervision, coworkers, and usual work situations. A finding of disability would be appropriate.

Id.

In the present case, the ALJ found only nonexertional impairments, that is, generalized anxiety disorder with panic attacks, mild mental retardation, and dysthymic disorder, and

determined that Plaintiff could perform a full range of work at all exertional levels but with the following nonexertional limitations: she could perform "simple, routine repetitive tasks with simple short instructions in a low-stress job that has no production or pace requirements and only requires occasional contact with coworkers and supervisors and no contact with the general public to perform her job tasks." (Tr. at 16.) The ALJ then found, without explanation, that Plaintiff's nonexertional limitations "have little or no effect on the occupational base of unskilled work at all exertional levels." (Tr. at 19.) As a result, the ALJ relied on the Grids for unskilled work to conclude that Plaintiff was not disabled. However, this determination requires further consideration for two reasons: (1) once again, the ALJ's findings are internally inconsistent, and (2) the limitations set out in the RFC require individualized determination.

First, the ALJ's findings reflect an internal inconsistency. Specifically, as noted above, the ALJ found that Plaintiff's nonexertional limitations "have little or no effect on the occupational base of unskilled work at all exertional levels." (Tr. at 19.) Paradoxically, he also determined that Plaintiff's "alleged impairments cause significant limitations in her ability to perform basic work activities." (Tr. at 18.) However, as noted above, Social Security Ruling 85-15 ("SSR 85-15") explicitly defines unskilled work in terms of basic work activities: "The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting." SSR 85-15, 1985 WL 56857, at *4. In other words, the ALJ failed to reconcile his finding that Plaintiff could perform a full range of unskilled work with his

incongruous finding that Plaintiff's impairments "cause significant limitations in her ability to perform basic work activities." (Tr. at 18.)

In attempting to address these issues, it appears that the ALJ attempted to equate Plaintiff's RFC with a finding of unskilled work, noting that "the residual functional capacity above, which limits her to performing unskilled work, more than adequately accounts for these impairments." (Tr. at 18.) However, to the extent the ALJ equated "unskilled" work with the RFC, this Court has previously found that a limitation to "simple, routine, repetitive tasks" is narrower than unskilled work. Boler v. Colvin, 2013 WL 5423647 (M.D.N.C. Sept. 26, 2013) ("[I]t is clear that 'simple, routine, repetitive work is a narrower category (meaning greater limitations) than unskilled work' in general." (quoting McClendon v. Astrue, No. 1:10CV411, 2012 WL 13525, at * 7 (M.D.N.C. Jan. 4, 2012) (unpublished)). "Unskilled work" is a term of art, defined as "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. § 416.968(a). This Court, along with others within the Fourth Circuit, has held that "whether or not unskilled work squares with a claimant's particular mental limitations presents a fact-specific determination." Boler, 2013 WL 5423647, at *4 (citing Smith v. Schweiker, 719 F.2d 723, 725 (4th Cir. 1984)). Here, it is not clear how a reference to "unskilled" work would capture, in functional terms, the consequences of Plaintiff's deficiencies. Boler, 2013 WL 5423647, at *4 ("Regardless of whether an ALJ relies on the grids or VE testimony, his step five analysis must capture, in functional terms, 'the concrete consequences of a claimant's deficiencies' as supported by the substantial evidence." (quoting Cox v. Astrue, 495 F.3d 614, 620 (8th Cir. 2007)).

17

Moreover, the RFC here is not simply for "simple routine repetitive tasks," but instead specifically requires "a low-stress job that has no production or pace requirements and only requires occasional contact with coworkers and supervisors and no contact with the general public to perform her job tasks." (Tr. at 16.) The ALJ provides no basis to support a determination that these limitations would not affect the occupational base for unskilled work.[10] Most notably, the ALJ limited Plaintiff to "occasional contact with coworkers and supervisors and no contact with the general public." (Tr. at 16.) "'Occasionally' is defined for most purposes as one-third of a work day. Under that definition, for two-thirds of a work day [such a claimant] would be unable to respond appropriately to co-workers [or] supervisors." Rothrock, 2016 WL 1175189, at *10 (quoting Garver v. Astrue, No. 09CV2259WYD, 2011 WL 1134721, at *17 n.12 (D. Colo. Mar. 28, 2011)) (internal citations and quotation marks omitted). In addition, the ALJ found the claimant in the present case unable to interact with the general public *for any period of time.* Therefore, "[o]n its face, the limit on Plaintiff's social interaction conflicts with the basic demands of unskilled work as defined in SSR 85–15," as she would be unable to furnish socially-appropriate responses for the majority of the workday. Haselden v. Astrue, No. CA 9:10-545-CMC-BM, 2011 WL 2036457, at *3 (D.S.C. May 23, 2011).

---

[10] The ALJ cites to and quotes from 20 CFR Subpart P Appendix 2, Section 200.00(b), noting that "in promulgating the rules, administrative notice has been taken of the number of unskilled jobs that exist throughout the national economy at the various functional levels . . . . Thus, when an individual retains a residual functional capacity to perform a wide range of light, medium, or heavy work, which includes the functional capacity for work at the lesser functional levels as well, the existence of such jobs is established." (Tr. at 19-20.) However, the ALJ fails to quote the very next line of that regulation, which states, "However, the existence of such jobs for individuals whose remaining functional capacity or other factors do not coincide with the criteria of a rule must be further considered in terms of what kinds of jobs or types of work may be either additionally indicated or precluded." 20 C.F.R. 404, Subpt. P, App. 2 § 200.00(b). It is that consideration and analysis that the ALJ failed to undertake in this case.

The Court also notes that the Fourth Circuit's recent decision in Mascio makes clear that "an ALJ does not account for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work," because "the ability to perform simple tasks differs from the ability to stay on task." 780 F.3d at 638 (quotation omitted). Indeed, the Commissioner in her brief notes that "[u]nlike the RFC in Mascio that limited the claimant to merely 'unskilled work,' here, the RFC accounted for and expressed Plaintiff's assessed work-related mental functional difficulties. Specifically, the ALJ found that Plaintiff was limited to performing simple routine, repetitive tasks with simple short instructions in a low-stress job that had no production or pace requirements. These work-related functional limitations accommodated Plaintiff's moderate limitation in concentration, persistence or pace." (Def. Br. [Doc. #12] at 12.) However, the Commissioner also contends that the RFC generally reflects the definition of "unskilled" work and therefore use of the grids was appropriate. (Id. at 13-14.) The RFC cannot be both more restrictive than 'unskilled' to satisfy Mascio, and the same as 'unskilled' to support use of the Grids. To allow an ALJ to avoid Mascio's requirements simply by applying the Grids rather than soliciting vocational testimony would undermine the rationale underlying that case's ruling. [11]

---

[11] Plaintiff argues that her limitation to "simple routine repetitive tasks with simple short instructions in a low-stress job that has no production or pace requirements" does not adequately account for her moderate limitation in concentration, persistence, or pace. (Pl.'s Br. at 13-15) (citing Tr. at 16). In particular, she asserts that none of the limitations in the RFC address her limited ability to stay on task. Although the ALJ included a limitation to "a low-stress job that has no production or pace requirements," neither the ALJ's decision, nor the state agency physicians' reports which the ALJ credits, links Plaintiff's difficulties in concentration to the non-production limitation or to any other aspect of the RFC. Thus, it is not clear that the ALJ has provided the "logical bridge" necessary for this Court to find that the RFC adequately takes into account Plaintiff's moderate difficulties in concentration, persistence, and pace. See Garcia v. Colvin, 5:14CV942, 2016 WL 319860 (E.D.N.C. Jan. 4, 2016). In light of the recommended remand set out above, the Court need not consider this issue further at this time, and any Mascio issues can be raised by Plaintiff on remand.

Finally, the Court notes that the Commissioner, also relying on SSR 85-15, now contends that "unskilled jobs ordinarily involve dealing primarily with objects, rather than with data or people. . . . Hence, Plaintiff's assessed limitation of having no more than occasional and superficial interaction with others has little or no effect on the occupational base of unskilled work at all exertional levels." (Def.'s Br. at 14.) However, the ALJ failed to supply this basis – or any specific basis – for his reliance on the Grids, and the Commissioner's after-the-fact rationale cannot provide sufficient explanation for meaningful review by the courts. See Sec. & Exch. Comm'n v. Chenery Corp., 318 U.S. 80, 87 (1943) (courts must review administrative decisions on the grounds upon which the record discloses the action was based); see also Clifford v. Apfel, 227 F.3d 863, 872 (7th Cir. 2000) ("[The ALJ] must articulate some legitimate reason for his decision."); Wyatt v. Bowen, No. 89-2943, 887 F.2d 1082 (table), 1989 WL 117940, at *4 (4th Cir. Sept. 11, 1989) ( "[T]he duty of explanation will be satisfied when the ALJ presents '[the court] with findings and determinations sufficiently articulated to permit meaningful judicial review,' which must include specific reference to the evidence producing [the ALJ's] conclusion." (quoting DeLoatche v. Heckler, 715 F.2d 148, 150 (4th Cir. 1983), and citing Hammond v. Heckler, 765 F.2d 424, 426 (4th Cir. 1985))).[12]

---

[12] Furthermore, courts considering similar contentions have held that an "ALJ's conclusory finding that a limitation on social interaction would not significantly erode the occupational base because unskilled work 'usually involves working with objects rather than people' is unsupportable." Wilson v. Colvin, No. CV 6:14-4322-TMC-KFM, 2015 WL 9660028, at *10 (D.S.C. Dec. 21, 2015), report and recommendation adopted, No. CV 6:14-4322-TMC, 2016 WL 81808 (D.S.C. Jan. 7, 2016) (citing Lowther v. Colvin, C.A. No. 9:12–cv–2603–RBH, 2013 WL 5743855, at *4 (D.S.C. Oct. 23, 2015) (citing Anthony v. Comm'r of Social Sec., No. 11–1400, 2012 WL 4483790, at * 27 (N.D. Ohio Sept. 27, 2012) (finding that because someone performing unskilled work must be able to appropriately respond to supervisors and co-workers on a sustained basis, it was error for the ALJ to rely on the grids for a claimant who had moderate social limitations) and Phillips v. Astrue, No. 4:11–cv–1018–JMC–TER, 2012 WL 3765184, at * 4 (D.S.C. June 11, 2012), adopted by 2012 WL 3775968 (D.S.C. Aug. 30, 2012)); see also Haselden v. Astrue, 2011 WL 2036457, at *3.

Accordingly, the ALJ's application of the Grids at step five, without sufficient basis or support, and the failure to make an individualized determination and consider vocational expert testimony at step five, provides an additional basis for remand.

IT IS THEREFORE RECOMMENDED that the Commissioner's decision finding no disability be REVERSED, and that the matter be REMANDED to the Commissioner under sentence four of 42 U.S.C. § 405(g). The Commissioner should be directed to remand the matter to the ALJ for further consideration of Plaintiff's claims in light of the above Recommendation. Defendant's Motion for Judgment on the Pleadings [Doc. #11] should be DENIED, and Plaintiff's Motion for Judgment Reversing the Commissioner [Doc. #8] should be GRANTED to the extent set out herein.

This, the 25th day of October, 2016.

          /s/ Joi Elizabeth Peake
United States Magistrate Judge